*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. W. TYLER, Minor.

UNPUBLISHED
March 21, 2024

No. 363673
Wayne Circuit Court
Family Division
LC No. 2019-001031-NA

Before: O'BRIEN, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the order which terminated her parental rights to her minor child, AWT, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist that could have led to adjudication), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood the child will be harmed if returned to the parent).[1] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This matter began when petitioner, the Department of Health and Human Services (DHHS), filed a petition in May 2019. In relevant part, the petition alleged respondent was unable to provide proper care and custody because she was incarcerated and had a history of homelessness. It was requested the trial court authorize the petition, place ATW in the care of DHHS, and exercise jurisdiction. An ex parte order was entered, requiring ATW be placed in care, and he was placed in a nonrelative foster home. After a preliminary hearing, the trial court authorized the petition, and respondent was granted supervised parenting time.

In July 2019, the trial court exercised jurisdiction after respondent made admissions. The trial court ordered reasonable efforts toward reunification be made. Respondent was ordered to (1) complete a psychological and substance abuse assessment, (2) attend parenting classes, (3) obtain and maintain stable housing and income, (4) attend parenting time, (5) submit to substance screenings, and (6) maintain contact with the caseworkers. Respondent's progress during the

---

[1] AWT's legal father is deceased.

proceedings was poor. She continued to smoke marijuana, tested positive for cocaine and other drugs, and was terminated from services for noncompliance, and was inconsistent with attending parenting times. Respondent often failed to attend ATW's medical, therapeutic, and educational appointments during the proceedings.

In December 2021, DHHS filed a supplemental petition for termination. Respondent's parenting time was suspended because ATW was having negative reactions to respondent's inconsistent attendance. After holding a termination hearing, the trial court found grounds for termination were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The trial court also found termination of respondent's parental rights was in ATW's best interests and reasonable efforts toward reunification were made. This appeal followed.

## II. REASONABLE EFFORTS

On appeal, respondent argues the trial court erred when it determined DHHS made reasonable efforts to promote reunification, arguing respondent "should have been given more individualized services, such as a parenting coach and the time to come into full compliance." Additionally, respondent argues that she was not provided with reasonable accommodations, such as assistance with transportation.

The Lawyer Guardian Ad Litem (LGAL) argues that respondent did not properly preserve the argument that DHHS failed to provide proper services and therefore her arguments are unpreserved and subject to the plain error analysis found in *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). Further, the LGAL asserts on appeal that while respondent partially complied with services for three years, she never challenged the adequacy of the services. Hence, the LGAL argues, respondent cannot establish plain error affecting her substantial rights occurred. Additionally, it is the position of the LGAL on appeal that respondent failed to comply with, and benefit from, services during the lengthy proceedings. Respondent also failed to maintain contact with the caseworker and was uncooperative. For these reasons, the LGAL requests this Court affirm.

## A. PRESERVATION AND STANDARD OF REVIEW

We first consider whether respondent has properly preserved her argument regarding the failure of DHHS to provide her with adequate services. "In order to preserve an argument that [DHHS] failed to provide adequate services, the respondent must object or indicate that the services provided to them were somehow inadequate. . . ." *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022) (quotation marks and citation omitted; alteration in original).

> [T]he earliest point at which a respondent can object to or indicate inadequacy with the case services plan is when the initial case services plan is adopted.
>
> However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings. [*Id*. at 337.]

We agree with the LGAL that respondent did not argue the initial case service plan was inadequate. Additionally, at later hearings, respondent never challenged the adequacy of the services, or the assistance DHHS was providing to her. Rather, the topic of the hearings was usually to address respondent's failure to participate in services despite being referred multiple times. At no point did respondent argue she should be provided with additional or different assistance. Consequently, because respondent did not challenge "the adequacy of the services being provided," the argument is unpreserved. See *id*.

Unpreserved arguments are reviewed for plain error affecting substantial rights. *In re Pederson*, 331 Mich App at463. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Reversal is only warranted when the plain error "seriously affect[ed] the integrity, fairness, or public reputation of judicial proceedings." *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020).

## B. ANALYSIS

> Except under aggravating circumstances not present in this case, [DHHS] has a statutory duty to make "reasonable efforts to reunify the child and the family . . . ." MCL 712A.19a(2). This means [DHHS] "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). "While [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." [*In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).] This means a respondent-parent must both participate in services and "demonstrate that they sufficiently benefited from the services provided." *Id*. [*In re Atchley*, 341 Mich App at 338-339 (second alteration in original).]

Respondent argues she should have been provided with "more individualized services, such as a parenting coach and the time to come into full compliance." However, respondent was invited to attend ATW's Infant Mental Health services. In 2020, respondent had a "parent partner" and had supportive visitation services. Respondent also worked with another parent partner for six months in 2021. Respondent failed to benefit from the services. Respondent was also referred to parenting classes, and caseworkers assisted respondent with managing ATW's behavior during parenting times.

Importantly, respondent denied during a majority of the proceedings that ATW had special needs, and she continued to smoke marijuana despite the effect her case workers and the referee found it had on her parenting abilities. While respondent complains on appeal her parenting time

-3-

was suspended,[2] respondent did not appeal the trial court's decision. Additionally, parenting time was suspended because of the negative effect respondent's inconsistent attendance to parenting time had on ATW. Contrary to respondent's arguments on appeal, she was provided with services to assist her with addressing her parenting skills and ATW's special needs. It was respondent's lack of effort and her resulting failure to benefit from services that caused respondent not to make any improvement in her ability to properly parent ATW.

Respondent also argues she was not provided with transportation assistance. The record does reveal that in one instance a caseworker testified that they would provide bus passes to respondent in the event she requested them, suggesting that at some time in these proceedings respondent needed, but did not have, bus passes. However, the record also reveals that at all other times respondent was provided with bus passes. Additionally, during a January 10, 2022 hearing, a caseworker testified respondent reported during the review period she did not require transportation assistance. Respondent did not provide evidence to the contrary or object to this testimony. There was also testimony during the proceedings that respondent drove, although without a driver's license. Again, caseworkers testified that they would assist respondent to secure the return of her driver's license. Hence, from this record we cannot conclude that respondent was deprived of assistance with transportation. At the termination hearing, a caseworker testified there were not any additional services respondent could be provided, and testimony supported respondent simply failed to comply with, or benefit from, the services provided to her.

In sum, respondent failed to uphold her "commensurate responsibility" to engage in and benefit from the services offered by DHHS. See *In re Frey*, 297 Mich App at 248. There is no indication in the record that respondent would have fared better if DHHS had offered other services or additional services. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005).

## III. STATUTORY GROUNDS

Respondent next argues the trial court clearly erred by finding a statutory ground for termination. Respondent also argues termination violated her constitutional rights.

## A. STANDARD OF REVIEW

"This Court . . . reviews de novo questions of constitutional law." *Barretta v Zhitkov*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 364921); slip op at 5 (alteration in original; quotation marks and citation omitted), quoting *Bailey v Antrim County*, 341 Mich App 411, 420; 990 NW2d 372 (2022). "We review for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re A Atchley*, 341 Mich App at 343. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special

---

[2] Respondent's parenting time was suspended after the supplemental petition for termination was filed, which is permissible under MCL 712A.19b(4) ("If a petition to terminate parental rights to a child is filed, the court may suspend parenting time for a parent who is a subject of the petition.").

opportunity to observe the witnesses." *In re Miller*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 364195); slip op at 2.

## B. ANALYSIS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App at 472. We conclude the trial court did not clearly err by finding termination of respondent's parental rights was proper under MCL 712A.19b(3)(j), which authorizes termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

There is no indication respondent was able to sustain suitable, stable housing. At the time of termination, respondent was in the process of being evicted and would not permit the caseworker to evaluate her home. Homelessness and unsuitable living conditions had traumatic effects on ATW, who, when with respondent, spent most of his life homeless. That fact alone created a situation where ATW had, by the time of termination, spent most of his life in care and desperately required permanency. Respondent also had issues with substance abuse despite being referred for therapy and other services. Respondent continually failed to comply with her case service plan. See *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018) ("a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home") (quotation marks and citation omitted). A caseworker believed respondent would be unable to safely parent ATW, who required continuous supervision, because her substance abuse issues were not addressed despite respondent being referred to services. Importantly, ATW has extensive special needs, which require his and his guardian's ongoing participation in services. Those services often occurred up to four times a week and would require any care giver to be able to commit a significant portion of their time to ensuring that they and ATW were able to attend those sessions. However, despite being invited to most of ATW's sessions, respondent failed to make a majority of the appointments leaving the distinct impression to the trial court that it was unclear how respondent would provide for ATW's special needs. Indeed, during the proceedings, respondent delayed consenting to medical treatment and failed to attend medical, educational, and therapeutic appointments despite being provided with notice. As previously stated, respondent also lacked a driver's license.

Additionally, the record demonstrated that ATW does well in stable environments, and it is clear respondent is unable or unwilling to provide this to ATW. Respondent was inconsistent with attending parenting time despite knowing this negatively affected ATW. Respondent's parenting time was suspended during the proceedings because of the negative effect respondent's inconsistent behavior had on ATW. ATW's behavior and seemingly overall health improved after respondent's parenting times were suspended.

From this record we conclude that the trial court's finding that termination of respondent's parental rights was proper under MCL 712A.19b(3)(j) and therefore was not clearly erroneous because there is a reasonable likelihood ATW would experience harm if returned to respondent. See *In re Pederson*, 331 Mich App at 473 (evidence of physical and emotional harm can be considered for purposes of MCL 712A.19b(3)(j)). Cf. *In re Baham*, 331 Mich App 737, 758-759; 954 NW2d 529 (2020) (holding that termination was improper under MCL 712A.19b(3)(j) where

the respondent's behavior during parenting time was appropriate, the respondent was making plans to support herself, and the respondent was "compliant with services and was seeking out additional services").[3] As a result, respondent's constitutional argument necessarily fails. See *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded in part by statute as stated in *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013) ("Once the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established . . ., the liberty interest of the parent no longer includes the right to custody and control of the children.").

## IV. BEST INTERESTS

Respondent also argues the trial court clearly erred by finding termination of her parental rights was in ATW's best interests and that the trial court failed to consider certain relevant evidence. MCL 712A.19b(3)(j) was not clearly erroneous. MCL 712A.19b(3)(j) was not clearly erroneous.

The LGAL argues that the trial court properly found termination was in ATW's best interests. The trial court found respondent failed to rectify the condition that led to adjudication, noted the amount of time ATW had been in care, considered ATW's bond with respondent and his foster parents, and found respondent could not provide a stable and safe home. Therefore, the LGAL argues, this Court should affirm.

## A. STANDARDS OF REVIEW

We review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, ___ Mich App at ___; slip op at 2.

## B. ANALYSIS

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. This Court focuses on the child—not the parent— when reviewing best interests. *In re Atchley*, 341 Mich App at 346. When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond
> to the parent, the parent's parenting ability, the child's need for permanency,
> stability, and finality, and the advantages of a foster home over the parent's home.

---

[3] Because termination was proper under MCL 712A.19b(3)(j), we need not specifically consider the additional grounds upon which the trial court based its decision. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Respondent argues the trial court failed to adequately consider evidence related to these factors. However, the record belies respondent's argument. The record supports the trial court's finding that ATW's foster parents were meeting ATW's needs. In contrast, the record supports the trial court's finding that respondent was unable or unwilling to properly parent ATW or provide for his extensive special needs. The trial court found ATW was bonded with the foster parents and was not strongly bonded with respondent given his negative reactions to parenting times with her. The trial court further found ATW required permanency, stability, and finality. These findings of fact were sufficient, and contrary to respondent's argument on appeal, the trial court adequately considered the relevant factors.

Further, at the time of termination, ATW had not seen respondent for eight months, and he did not ask about her. Even if respondent and ATW were bonded to a certain extent, the bond was not healthy for ATW, who had spent a majority of his young life in care. ATW was distressed by respondent's inconsistent attendance at parenting times and demonstrated distress after parenting times, which led to respondent's parenting time being suspended. Respondent also refused to acknowledge the trauma ATW suffered in her care and his special needs. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2002), overruled on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014) (holding because there was a "serious dispute on the record concerning whether [the respondent] had a healthy bond of any sort with her children," termination of her parental rights was in the children's best interests).

While the parent-child bond is only one factor for the trial court to consider, *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012), respondent was unable to provide stability and permanency for ATW. Respondent lacked commitment to completing services and failed to establish she obtained and maintained stable housing. This was especially problematic because ATW, who has extensive special needs, requires stability because he has behavioral issues and had experienced trauma. Importantly, ATW requires extensive supervision because he elopes. Because respondent either failed to comply with, or benefit from, the services provided to her during the 3-1/2 year proceedings, respondent lacked the ability to provide proper care to ATW.

Additionally, as previously alluded to, there is no indication in the record that respondent will be able to ensure ATW will obtain the services and treatment he requires to improve and thrive. At times, respondent delayed consenting to medical treatment for ATW, and she failed to attend a majority of his therapeutic, educational, and medical appointments despite being provided notice. Meanwhile, ATW was doing well in his placement with his foster parents and had improved since entering care. The foster parents were interested in adopting ATW, who had been in their care for 3-1/2 years. In sum, ATW seemed to be doing much better when respondent was not around. On this record, we conclude that the trial court did not clearly err by finding termination of respondent's parental rights was in ATW's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Stephen L. Borrello
/s/ Noah P. Hood